No. 95-3155

United States of America,         *
                        *
        Appellee,         *
                        *   Appeal from the United States
    v.                     *   District Court for the
                        *   Eastern District of Arkansas.
James Kennedy Caldwell,       *
                        *
        Appellant.         *

Submitted:   January 9, 1996

Filed:   May 3, 1996

Before WOLLMAN, CAMPBELL,[*] and MURPHY, Circuit Judges.

WOLLMAN, Circuit Judge.

James Kennedy Caldwell was convicted of conspiracy and of trafficking in vehicles with altered vehicle identification numbers (VINs) in violation of 18 U.S.C. §§ 371, 511, and 2321. He was sentenced to twenty-three months' imprisonment. Caldwell appeals his conviction on two grounds: (1) the district court should have investigated his allegations of juror misconduct and granted his motion for a new trial; and (2) the evidence was insufficient to convict him. We affirm the judgment of the district court.[1]

---

*The HONORABLE LEVIN H. CAMPBELL, United States Circuit Judge for the First Circuit, sitting by designation.

[1]The Honorable William R. Wilson, Jr., United States District Judge for the Eastern District of Arkansas.

**I.**

Caldwell operated a small used-vehicle dealership outside Forrest City, Arkansas. In June 1991 he began purchasing vehicles from co-defendant Danny Ray Reeves. Reeves owned a body shop and directed a scheme whereby he transferred the VIN plates and titles from wrecked vehicles onto stolen ones of the same make, model, and year and then sold the stolen vehicles either to unsuspecting buyers or to retailers such as Caldwell. Between June 1991 and October 1992, Caldwell purchased a total of thirty vehicles from Reeves.

Caldwell was tried with Reeves and two other co-defendants.[2] The testimony of several admitted co-conspirators and the evidence regarding the thirty vehicles that Caldwell purchased from Reeves linked Caldwell to the illegal scheme. The jury found him guilty of conspiracy and of twenty-five counts of possession and sale of motor vehicles with illegally altered VINs. The jury acquitted him on five counts.

Several days after the trial, Caldwell's counsel spoke with defense witness Travis Sinclair, who alerted him to potential juror misconduct that had occurred during the trial, to wit, a juror's statement that he had "heard about all of this [he] [could] stand." Later, at Caldwell's sentencing, the attorney learned that Caldwell's sister, Patricia Davidson, and a co-defendant's mother-in-law, Esther Sampley, had also observed incidents of juror misconduct involving additional juror statements and the presence of a juror's husband in the jury room. Caldwell filed a motion for a new trial based on juror misconduct. After conducting a brief hearing on this matter, at which Caldwell was allowed to present

---

[2]The Reeves brothers' convictions were affirmed on this day. See No. 95-2410, United States v. Marlin Lynn Reeves and No. 95-2411, United States v. Danny Ray Reeves, slip op. (8th Cir. May 3, 1996).

-2-

the testimony of Sinclair, Davidson, and Sampley, the district court denied the motion.  Caldwell was not permitted to call as witnesses any of the jurors or the husband who allegedly entered the jury room.

## II.

Caldwell first argues that the district court erred in refusing to investigate further his claims of juror misconduct and in denying his motion for a new trial based on this misconduct.  We review both the district court's handling of allegations of juror misconduct and its denial of the motion for a new trial for an abuse of discretion.  United States v. Wiley, 997 F.2d 378, 383 (8th Cir.) (allegations of juror misconduct), cert. denied, 114 S. Ct. 600 (1993); United States v. Cruz, 993 F.2d 164, 167 (8th Cir. 1993) (motion for new trial).

We first address the interchange between Patricia Davidson and one of the jurors, in which Davidson claims to have responded to the juror's assertion that "all four of them's [sic] guilty," with the reply, "no, one's not."  Davidson informed Caldwell of this incident during the trial, but Caldwell did not tell his attorney for fear that it would somehow get either him or his sister into trouble, as the witnesses had been instructed to have no contact with the jury.  Whatever the reason for his silence, Caldwell's failure to inform his attorney during trial of the juror's statement constituted a waiver of any claim for relief.  See United States v. Dean, 667 F.2d 729, 732-34 (8th Cir.) (en banc), cert. denied, 456 U.S. 1006 (1982); United States v. Laird, 948 F.2d 444, 446 (8th Cir. 1991).

We turn, then, to the remaining claims of juror misconduct, which were not brought to Caldwell's attention until after trial.  To prevail on these claims, Caldwell must present evidence of juror misconduct that is not barred by the rule of juror incompetence and

is sufficient to establish grounds recognized as adequate to overturn the verdict. United States v. Eagle, 539 F.2d 1166, 1169-70 (8th Cir. 1976), cert. denied, 429 U.S. 1110 (1977).

Federal Rule of Evidence 606(b) generally precludes the testimony of any juror regarding intrajury communications, as well as the testimony of a nonjuror regarding an intrajury statement. See Scogin v. Century Fitness, Inc., 780 F.2d 1316, 1318-20 (8th Cir. 1985) (precluding testimony from court bystander that a juror confided that the jury had reached a quotient verdict); 27 C. Wright and V. Gold, Federal Practice and Procedure § 6074 at 416 (1990) (Rule 606(b) has been interpreted to exclude "all manner of juror statements, whether conveyed directly to the court by the juror or indirectly through a witness who overheard the statement"). The rule's two exceptions allow testimony regarding extraneous prejudicial information and outside influences brought to bear on the jury. Scogin, 780 F.2d at 1318.

Two of the alleged incidents of juror misconduct involve intrajury statements overheard by a nonjuror during the course of the trial. These include: (1) a comment overheard by Sinclair to the effect that "I've heard all of this I need to hear"; and (2) a comment overheard by Sampley to the effect that "this is just a bunch of crap." Neither statement may be used to impeach the jury's verdict. See United States v. Resko, 3 F.3d 684, 690 (3d Cir. 1993) (finding that although the jury engaged in premature deliberations, "there is no reason to doubt that the jury based its ultimate decision only on evidence formally presented at trial"). Thus, the district court did not abuse its broad discretion either in refusing to conduct further inquiry into these alleged statements or in refusing to grant a new trial on the basis of this alleged misconduct. See Tanner v. United States, 483 U.S. 107 (1987) (policy against investigating alleged improprieties when they are intrajury); Wiley, 997 F.2d at 383-84 (district court has broad discretion in handling allegations of juror misconduct).

The final incidents of alleged misconduct involve Patricia Davidson's assertion that she saw a man enter the jury room and Esther Sampley's testimony that she saw a man, whom she believed to be a juror's husband and whom she had seen watching the trial, enter the jury room during several breaks. To the extent that these incidents allege external influence, they are not barred from consideration under Rule 606(b). See United States v. Swinton, 75 F.3d 374, 381 (8th Cir. 1996). Moreover, third-party communications regarding the substance of the trial are presumptively prejudicial and can constitute grounds for a new trial unless the government establishes that the contact was harmless to the defendant. Wangrow v. United States, 399 F.2d 106, 117 (8th Cir.), cert. denied, 393 U.S. 933 (1968). Caldwell's attempt to apply the third-party communication rule to these facts, however, is flawed. Caldwell offers no evidence that the juror's husband gained improper knowledge from watching the trial and then imparted that knowledge to the jury or even that any communication between the husband and the jurors occurred. See United States v. Phillips, 609 F.2d 1271, 1274 (8th Cir. 1979) (speculative contact between jurors and third parties does not create presumption of prejudice). Rather, Caldwell offers a vague picture of third-party contact with the jury. The district court acted well within its discretion in finding that these nebulous allegations were insufficient to merit further investigation. See United States v. Williams, 77 F.3d 1098, 1100 (8th Cir. 1996) ("district court has broad discretion in handling allegations of juror misconduct").

## III.

Caldwell next argues that the district court erred in denying his motion for judgment of acquittal on the basis of insufficiency of the evidence. In considering this claim we must review the evidence in the light most favorable to the government, reversing only if we conclude that no reasonable jury could have found Caldwell guilty beyond a reasonable doubt. United States v.

<u>Quintanilla</u>, 25 F.3d 694, 699 (8th Cir.), <u>cert. denied</u>, 115 S. Ct. 457 (1994).

Because Caldwell does not dispute either the existence of the conspiracy or that he bought and sold stolen vehicles bearing tampered-with VINs, the sufficiency challenge centers on whether Caldwell had knowledge of the illegal scheme.  Caldwell claims to have been merely an unsuspecting participant; and indeed, the record reveals no direct evidence tending to prove that Caldwell knew of the illegal activities.  None of the co-conspirators testified to having spoken with Caldwell about the stolen vehicles, and Caldwell himself testified that he did not know the vehicles he was selling were stolen until his customers informed him that they had been confiscated.

Moreover, the jury heard evidence that tends to support Caldwell's claim that he did not know he was selling stolen vehicles.  Numerous witnesses testified to Caldwell's reputation for honesty.  Caldwell introduced evidence regarding his efforts to repay many of the losses suffered by his customers whose vehicles were confiscated.  Several used-vehicle dealers testified that the general trade practice does not involve a careful inspection of vehicles to determine if they are stolen.  Caldwell also presented testimony that Reeves' reputation for reconditioning salvage vehicles was excellent and that those reconditioned vehicles often appeared quite new.  Finally, co-conspirator Shane Roberts testified that although he took stolen vehicles directly to the lot of the other dealer charged in the conspiracy, he never took vehicles to Caldwell's dealership until after they were "fixed"  -- that is, until after the windows and steering columns broken to steal the vehicles had been mended and after the VINs were changed.

Notwithstanding the foregoing evidence, we find that sufficient circumstantial evidence was presented from which the jury could have inferred that Caldwell knowingly participated in

the illegal activities.  Caldwell bought thirty stolen vehicles from Reeves over a period spanning only sixteen months.  One of the co-conspirators, David Paul Davis, testified that Caldwell essentially custom-ordered vehicles from Reeves, presenting Reeves with a standing offer to pay $7,000 for a 1989 Chevrolet or GMC truck, $7,500 for a 1990 version of these trucks and $8,000 for a 1991 version.  Because Reeves had a ready market for these vehicles, his illegal activity focused primarily on those models and years.

In addition, several of Reeves' employees testified that they went to Caldwell's lot to correct problems with the stolen vehicles.  For example, Roberts testified that sometimes one of the co-conspirator/employees would be sent to Caldwell's lot to fix an odometer so that the mileage on the stolen vehicle would match that on the salvage title.  Co-conspirator Davis testified that on at least one occasion Caldwell was present when Davis performed this task.  Davis also testified that Caldwell once instructed Reeves and Davis to switch a VIN from a newer truck on Caldwell's lot to an older one so that Caldwell could pass off the older model as a newer one and receive more money for its sale.  Although Caldwell was not charged in connection with this illegal activity, the jury reasonably could have determined that unless Caldwell knew that Reeves was engaged in illegal activity involving the switching of VINs, he would not have asked Reeves to illegally switch the VINs in this instance.  Bryan Boggan testified that he went to Caldwell's to remove glass that fell into the door frame when the driver-side windows were broken to steal the trucks.

Concededly, the evidence that Caldwell knew of and voluntarily participated in the illegal VIN-switching scheme is not overwhelming. After giving the government the benefit of all reasonable inferences, however, see United States v. DeLuna, 763 F.2d 897, 924 (8th Cir.), cert. denied, 474 U.S. 980 (1985), we conclude that the evidence is sufficient to support Caldwell's

conviction.    Moreover,   the   acquittal   of   Caldwell   on   five   counts demonstrates   that   the   jury   carefully   considered   the   evidence   before reaching   a   verdict.    Accordingly,   we   affirm   both   the   district   court's denial of Caldwell's motion for a new trial and Caldwell's conviction.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.