UNITED STATES of America, Plaintiff,

v.

Jim Guy TUCKER, Defendant.

No. LR–CR–95–173(2).

United States District Court,
E.D. Arkansas,
Western Division.

Feb. 17, 1999.

William H. Sutton, Elizabeth R. Murray, Friday, Eldredge & Clark, Little Rock, AR, Darrell F. Brown, James, Jacob & Lessmeister, Little Rock, AR, for Plaintiff.

Kenneth Starr, Leroy Morgan Jahn, William Ray Jahn, Rod J. Rosenstein, Jackie M. Bennett, Office of the Independent Counsel, Little Rock, AR, for Defendant.

## MEMORANDUM OPINION AND ORDER

GEORGE HOWARD, Jr., District Judge.

Pending before the Court is defendant Jim Guy Tucker's (Tucker) motion for a new trial. Tucker, the Governor of Arkansas until his conviction, was indicted on eleven counts in a twenty-one count indictment. He was convicted on May 28, 1996, of conspiracy involving the misuse of the funds of Madison

Guaranty Savings and Loan, and Capital Management Services, a small business investment company. He was also convicted of mail fraud in connection with a loan from Capital Management Services to Castle Sewer and Water Corporation.

On July 12, 1996, Tucker filed a supplement to his motion for new trial, alleging that he recently learned certain information regarding juror Renee Johnson. In particular, he alleged that Johnson failed to disclose her relationship to Charles Hayes, a convicted felon who was denied clemency by Tucker and is a nephew of Robert "Say" McIntosh, a bitter critic of Tucker.

The Court denied the motion for new trial. The Eighth Circuit Court of Appeals remanded the case in *United States v. Tucker*, 137 F.3d 1016 (8th Cir.1998). Pursuant to the Eighth Circuit's order, the Court conducted a hearing on Tucker's claims on December 2, 3, and 7, 1998. The parties submitted post-hearing briefs, proposed findings of fact and conclusions of law, and replies. The issue before the Court is whether Tucker's Sixth Amendment right to an impartial jury was violated because juror Renee Johnson (Johnson)[1] concealed her relationship to Hayes and the McIntosh family and because she was subjected to outside influence.

## FACTUAL BACKGROUND

Prior to the voir dire, prospective jurors completed a jury questionnaire. Question 39 asked if "You or any member of your family have ever been charged with a crime." Johnson responded "Yes" to the question. When asked what charge, she responded "drug conviction." When asked "[h]ow did the case end?", Johnson stated "Guilty (serving 4 years)." During voir dire, Johnson was not questioned about her response to question 39.

Johnson did not identify the person mentioned in question 39. She stated at the hearing that the response to question 39 referred to Brian Hayes, her sister's husband (and thus, Johnson's brother-in-law).

At the time Johnson completed her questionnaire, she was not married to Charles Hayes, Brian Hayes' brother, although they were engaged, living together with their child, and contemplating marriage.

Johnson married Charles Hayes (Hayes) after she was selected as a juror and during the fourth day of the trial on March 14, 1996. Hayes is the nephew of Robert "Say" McIntosh. Say McIntosh is a political activist, known throughout the Central Arkansas area for his outspoken criticism of political figures.[2] His criticism is not limited to a particular party; he is known to protest the actions of both Republicans and Democrats. He is known for distributing fliers which can be characterized as inflammatory and derogatory.

While Tucker was Governor, Say McIntosh was openly critical of him. He distributed a number of leaflets expressing his opinion of Tucker, including his belief that Tucker was guilty of the charges pending in this matter. In addition, he constructed a "mock cemetery" in the central Little Rock area which displayed signs critical of Tucker and President Clinton.

Hayes is also the cousin of Tommy McIntosh, the son of Say. Hayes, Tommy McIntosh and Maurice Crawford (a cousin of Hayes and Tommy McIntosh) were convicted in 1989 on drug charges in state court. Hayes and Crawford each were sentenced to 40 years in prison and a $50,000.00 fine. Tommy McIntosh was sentenced to 50 years in prison and a $250,000.00 fine.

William Walker (Walker), a member of the Arkansas legislature, first as a representative and then as a senator, was a friend of all

---

1. Johnson was married during the trial (see discussion *infra*) and is now Renee Hayes. To be consistent with the Eighth Circuit's opinion and with the parties' submissions, as well as to avoid any confusion, the Court will refer to her as Johnson.

2. McIntosh's political activism has been the subject of litigation. *See McIntosh v. White*, 582

F.Supp. 1244 (E.D. Ark. 1984), aff'd. in part, rev'd in part, 766 F.2d 337, on appeal after remand, 816 F.2d 409, judgment vacated, 825 F.2d 184, on remand, 676 F.Supp. 912, aff'd, 856 F.2d 1185 (8th Cir.1988). *See also, McIntosh v. Arkansas*, 1998 WL 171088 (Ark. Ct. of Appeals, Apr.8, 1998).

three men, that is Tommy McIntosh, Hayes, and Maurice Crawford (Crawford). Sometime in 1992, when Tucker was Acting Governor, Walker attempted to persuade Tucker to exercise executive clemency in favor of the three men. He met several times with Tucker.to argue the case of the three men. Walker believed the sentences to be excessive and politically motivated, based on Say McIntosh's activism. Walker told the three men and their families of his efforts with Tucker. In July, 1992, Tucker denied Hayes' clemency petition and sent a letter to Hayes conveying that information. Walker claimed that Hayes was upset upon hearing the news from him.

In January of 1993, Tucker, who by then was Governor, left the state to attend the presidential inauguration. While Tucker was out of state, Senator Jerry Jewell (Jewell) served as acting Governor. Walker approached Jewell about granting clemency for Tommy McIntosh, Hayes, and Crawford. Jewell granted Tommy McIntosh clemency on January 19, 1993, but did not take action on Hayes' and Crawford's request because the files were not in the office.[3] Walker stated that sometime after McIntosh's clemency, he went to see Hayes and Crawford and explained that the applications had not been acted upon because Tucker's chief of staff had not made the files available. Walker stated that Hayes was frustrated and angry upon learning of the denial, and thought that his not getting clemency was unfair.

At the time Hayes was applying for clemency, he also had a petition for writ of habeas corpus pending in federal court. Hayes ultimately prevailed on his petition for writ of habeas corpus. On March 31, 1993, the Eighth Circuit Court of Appeals affirmed the granting of the writ. *Hayes v. Lockhart*, 989 F.2d 505 (8th Cir.1993) (unpublished). The State did not retry Hayes and he was released pursuant to the granting of the writ.

Tommy McIntosh is also an outspoken critic of Tucker. Prior to Tucker's trial, Tommy and his father, Say, picketed Tucker's office demanding a pardon of his $250,-000.00 fine. Tommy McIntosh admitted to disliking Tucker. He claims to have discussed his negative feelings toward Tucker with Hayes, including his wish that Tucker be convicted.

At some point during the trial, Tommy McIntosh called Walker late one night and exclaimed "We've got somebody on the jury."[4] Walker stated that he didn't know what Tommy meant, to whom Tommy was referring and did not take Tommy seriously. According to Walker, Tommy McIntosh boasts and says some things that are not true, so Walker did not read a whole lot into what Tommy McIntosh said that night.

In July, 1996, after learning of Johnson's connection to the McIntosh family, Tucker called Walker to inquire about Johnson. Tucker asked Walker if he knew that Johnson was the wife of Hayes. During that conversation with Tucker, Walker said "That's what Tommy was talking about" and Walker recounted the telephone call he received from Tommy McIntosh.

Walker then met with Hayes to confirm that Hayes' wife had been on the jury. Walker testified that he spoke with Hayes after the trial about Johnson's jury service. Walker stated that he asked Hayes whether he had had any conversations with Johnson about the trial, to which Hayes responded, "Sure, that's my wife. We sleep together every night. We talked about it." Walker did not recall whether Hayes stated that he had spoken to Johnson about the trial *during* the trial. Hayes did not tell Walker what they discussed about the trial.

Hayes denied making the statement Walker attributed to him. However, even assuming that Hayes did make that comment, there is no evidence regarding the details of any conversations between Hayes and John-

---

**3.** Ned Turner, Tucker's Chief of Staff, called Tucker in Washington and informed him that Jewell was preparing to grant clemencies including a clemency to Tommy McIntosh. Tucker instructed his staff to not make any more files available to Jewell.

**4.** Walker stated that McIntosh called him late one night during the trial. Tommy McIntosh was not as certain that he made the call. He stated that he "might have mentioned that" to Walker. (See *infra*).

son. Walker acknowledged that Hayes did not tell Walker that he and Johnson discussed the trial or the guilt or innocence of Tucker. Nor did Hayes tell Walker that he had said anything to Johnson during the trial pertaining to the trial or to Tucker. Walker admitted that he did not know what Hayes meant when he made that statement.

Tommy McIntosh testified at the hearing. He stated that he visited Hayes on only two or three occasions during the trial. The two stayed outside and talked. Tommy McIntosh stated that he found out that Johnson was on the jury during the trial, although he was not sure from whom he learned the information.[5]

Tommy McIntosh stated he did not remember asking Hayes if he and Johnson talked during the trial. He also denied telling Walker that Hayes had talked to Johnson during the trial, and could not say for certain that he had told Walker "We got somebody on the jury." Even if he did make such a statement, Tommy McIntosh admitted that the comment was made as "boasting." Walker did not ask him to whom McIntosh referred. McIntosh stated that his conversations with Hayes about Johnson being on the jury were brief and that he did not do anything to try to get Hayes to influence Johnson. Tommy McIntosh also stated that Hayes never expressed anger at or said anything negative about Tucker during the trial. McIntosh and Hayes concur that Hayes never told Tommy McIntosh that he had talked to Johnson during the course of the trial. Furthermore, Tommy McIntosh never talked to Johnson about the trial.

Hayes testified at the hearing that he and Johnson did not really discuss his conviction. He had felt he was wrongfully convicted and wanted to put the matter behind him. He was not aware of Tucker's role in denying the clemency petition.[6] He stated that he could not recall which official denied him clemency, then Acting Governor Tucker or then Governor Bill Clinton. He had not put much stock in his clemency petition. Rather, he put more weight on the habeas petition which was pending in federal court, and on which there had been in a hearing in 1992.[7]

Hayes admitted that he spoke with Say McIntosh about Johnson being on the jury. Hayes was not sure whether the discussion took place during the trial or after. Hayes also admitted telling Tommy McIntosh that Johnson was on the jury at the time of the trial. He did not recall Tommy McIntosh asking him if Hayes had spoken to Johnson about the trial during the trial.

Hayes stated that he met with Walker. He stated that he did not tell Walker that he talked to Johnson about the trial while she was on the jury.

Walker, who had petitioned on Hayes' behalf, informed Hayes that Jewell did not act on the petition because his file had not been given to Jewell. Hayes testified that he did not have any personal animosity toward whomever denied him clemency, recognizing that executive clemency was extremely rare. Even assuming some hostility or disappointment on his part, Hayes did not convey his feelings to Johnson. In fact, Johnson was

5. Johnson's presence on the jury was a matter of public record. A March 12, 1996 article in the *Arkansas Democrat–Gazette* about the jurors contained the following: "The three youngest jurors—Renee Johnson, 27; Doris Jackson, 31; and Tracy Pleasants, 30—are black women, also a traditionally Democratic group." (*See Newswatch*, Service of the U.S. Court of Appeals Library for the Eighth Circuit, March 25, 1996, p. 8)

6. Hayes first applied for clemency in June, 1991, when President Clinton was then Governor of Arkansas. Tucker denied the application in July, 1992, when he was Acting Governor.

7. Hayes admitted to feeling confused when he learned of Tommy McIntosh's release. He, at

one point, stated that he thought his release had already been granted, and that he should have been released before McIntosh (p. 597, Transcript of December 7, 1998 hearing). His confusion is understandable. A review of the Court's docket sheet of Hayes' habeas proceeding (LR–C–90–751) reveals that on August 7, 1992, Magistrate Judge Jerry W. Cavaneau granted the petition for writ of habeas corpus, and directed the State to retry Hayes or the writ of habeas corpus would issue. The State appealed the judgment on August 31, 1992. The Eighth Circuit issued its Order affirming the judgment on March 31, 1993. This sequence of events also supports Hayes' position that he placed more weight on the habeas proceeding; he had already prevailed at the District Court level by the time McIntosh was granted clemency.

not even aware that Hayes had ever applied for executive clemency, and therefore had no knowledge of Tucker's role in the denial.

Johnson stated that she became personally involved with Hayes after his release from prison. She "knew of him" before then, having met him once when she visited Brian Hayes in prison. She and Hayes lived together for at least one year before their daughter Taylor was born. She and Hayes purchased the home on Tyler Street in November, 1995, shortly before Taylor's birth.

When Johnson first started dating Hayes, she was aware of the fact that he had been in prison. Hayes did not talk to her about prison and did not express any bitterness about time he spent in prison. She, like Hayes, believed that the conviction and imprisonment were "something they wanted to put behind" them. She was not familiar with the circumstances of how Hayes gained release or of Tucker's role in denying the clemency petition.

Johnson stated that she did not discuss the trial or Tucker with Hayes during the trial. While a juror, Johnson drove to the courthouse herself. She did not have lunch with Hayes except the day they were married. Every other day she had lunch with the jurors.

She also claimed that she did not have any conversations with Tommy McIntosh, or Bill Walker about the trial during the trial. Johnson testified that she knew the McIntosh family, and knew that Say was well known as a political activist. She was not, however, aware that Say did not like Tucker, although she was familiar with Say's leaflets. She admitted to not reading the newspaper

regularly and to watching the news only occasionally.

## ANALYSIS

As discussed by the Eighth Circuit, Tucker presents two discrete legal theories in his motion for new trial. Each is discussed below.

### Juror Bias

To obtain a new trial based on juror bias, Tucker has to prove "three things about the voir dire: 1) that Juror Johnson answered dishonestly, not just inaccurately; 2) that she was motivated by partiality; and 3) that the true facts, if known, would have supported striking her for cause." 137 F.3d at 1026. *See also United States v. Williams*, 77 F.3d 1098, 1100 (8th Cir.1996), *cert. denied*, 519 U.S. 967, 117 S.Ct. 392, 136 L.Ed.2d 308 (1996) ("Under *McDonough* the party challenging the juror's qualifications must show that the juror failed to honestly answer a material question on voir dire and that a correct response would have provided a valid basis for a challenge for cause. ")[8]

The government argues that the inquiry is limited to whether Johnson answered dishonestly in her response to question number 39 on her juror questionnaire. The Court disagrees. The Eighth Circuit was concerned with Johnson's responses during voir dire, including her failure to respond to the Court's and counsel's broad inquiry into possible bias or partiality.[9]

■ Tucker argues that Johnson should have disclosed her relationship with Hayes. The questionnaire did not ask about anyone other than relatives. None of the attorneys asked during voir dire about fiances. John-

---

8. Tucker argues that he need not demonstrate dishonesty but that it is merely a factor to be considered by the Court in determining whether Johnson was biased. *See McDonough*, 464 U.S. at 558, 104 S.Ct. 845 (Brennan, J. concurring). It would appear that Tucker is precluded from arguing that he does not have to meet the "dishonesty" threshold under the law of the case doctrine. *See Bethea v. Levi Strauss and Co.*, 916 F.2d 453, 456 (8th Cir.1990) ("When an appellate court remands a case to the district court for further proceedings consistent with the appellate decision, all issues the appellate court decides become the law of the case.") Here, the Eighth Circuit specifically found that Tucker must dem-

onstrate dishonesty, noting that Tucker had not asked the appellate court to decide whether he could receive a new trial without a showing of dishonesty. 137 F.3d at 1026 n. 7.

However, in an abundance of caution, the Court has considered Tucker's other claims pertaining to bias and as is discussed *infra* finds that they are without merit.

9. The Court and prosecutor asked whether there was anything that would affect the juror's ability to serve fairly and impartially in the case. Counsel for Tucker specifically asked whether the jurors harbored any negative feelings about Tucker.

son was not married to Hayes at the time of voir dire.

Even her plans for marriage were not definite. The evidence reveals that sometime in January, 1996, she spoke with the manager of the Hotze House, Peggy Tooker, about booking a wedding reception there for March 9th. Tooker stated that Johnson did not make the required deposit to reserve that date. At some later date, Johnson booked a March 29 reception which was held.

The Court notes that Johnson did not attempt to conceal her marriage. She had a reception at which around forty people attended. The reception took place during the trial, when Johnson's presence as a juror had been made public in the press. Furthermore, that neither Say nor Tommy McIntosh were at the reception or even knew of the marriage reflects that Johnson did not have a close or ongoing relationship with either.

Tucker argues that Johnson and Hayes lived together as a "family" at least a year before their daughter Taylor was conceived. They purchased a home together in Little Rock in November, 1995, before Taylor's birth on November 18, 1995. Nevertheless, Johnson did not believe that living as a "family" constituted a family. As Johnson stated, it takes a marriage to make a family.[10] Johnson testified credibly, in the Court's opinion, that Question 39 concerned only family members and that Charles Hayes did not fall into that category because they were not married.

The Court cannot find, based on the evidence at the hearing, that Johnson was dishonest or attempted to conceal Hayes' conviction or her relationship to him. She responded truthfully to the question. *See United States v. Wright*, 119 F.3d 630, 636 (8th Cir.1997) (juror did not answer dishonestly to question asking jurors whether they were related to "law enforcement offi-

cer" where he could have honestly believed that a tribal children's court judge was not a law enforcement officer). *See also Bolin v. Black*, 875 F.2d 1343, 1350 (8th Cir. 1989), *cert. denied*, 493 U.S. 993, 110 S.Ct. 542, 107 L.Ed.2d 539 (1989) (juror's failure to disclose that her son was on probation in response to voir dire question as to whether jurors' family members presently incarcerated not juror misconduct). Here, Johnson stated that she would have revealed the information about Hayes if she had been asked.

Consistent with Johnson's belief that she did not have to reveal information about Hayes, Johnson did not include any information about him in the questionnaire calling for family information. She responded "N.A." to questions about spouse although she was engaged at that time to Hayes. Questions about the family immediately preceded question 39.

The Court also finds that Johnson was not being dishonest or intentionally deceiving the litigants or the Court when she did not respond to the Court's requests that the jurors disclose anything that could have any bearing on their partiality. That Johnson disclosed the drug sentence of Brian Hayes, also of the McIntosh family, also is supportive of the government's position that Johnson did not intentionally deceive or hide anything. Although the Eighth Circuit found that Tucker did not have to ask any more questions, an inquiry as to the name of the family member by Tucker might have revealed Johnson's association with the McIntosh family.

■ Furthermore, the Court cannot find that Johnson was biased against Tucker. There is no evidence that she paid any attention to Say McIntosh's fliers or criticism of Tucker or that she was in any way influenced by his opinions.[11] There is no evidence that

---

**10.** Tucker asserts that even if Johnson's answer was "technically correct," she had some obligation to reveal her marriage during the trial to the parties. While Tucker asserts that due process entitles a party to notice of a juror's change in marital status during a trial, he has not pointed to any decision finding a constitutional violation where a juror did not reveal a change in marital status or which places such a requirement on a juror.

**11.** She stated that she did not read the fliers on the wall of Say's restaurant. When asked if she didn't take time to read them, she stated "No, I could care either way." Later she said she "didn't keep up with that stuff. [i.e., Say's activities]. It didn't concern me. I don't care either way." (Transcript of hearing, Dec. 3, 1998, p. 108.)

she harbored negative feelings toward Tucker.

Tucker argues that there is evidence that Hayes harbored some negative feelings toward Tucker, particularly with regard to the denial of clemency. Hayes denies this. However, even assuming Hayes had negative feelings toward Tucker, there is no evidence that he conveyed those feelings to Johnson. Indeed, the evidence is that Hayes never discussed his attempts at clemency, and that he and Johnson never even discussed Tucker during the trial..

The Court finds Hayes' testimony credible. He is extremely soft-spoken, and in the Court's opinion, genuinely desirous of putting his conviction and incarceration behind him. He stated that he spoke to Johnson about his conviction no more than twice. It "wasn't nothing that I wanted to just dwell on." (Transcript of hearing, Dec. 4, 1998, p. 481). He did not discuss the denial of clemency with Johnson, as it was not something on which he had placed a great deal of hope. In addition, the clemency application had been denied in 1992, before Hayes met Johnson and about two years before they started living together. Hayes realistically believed that the chances of obtaining clemency were minimal.

Emma Roland, Hayes' mother, supports Hayes' assertions. She stated that Hayes never expressed anger at Tucker about not being released and did not indicate in any way that Tucker was responsible for Hayes remaining incarcerated. Roland also stated that Hayes never mentioned anything about the trial to her.[12]

■ Additionally, the Court must reject Tucker's argument that Johnson's silence or failure to disclose her connection to the McIntosh family is indicative of some sort of implied bias. The Court cannot imply or

presume a juror's bias. *See Smith v. Phillips*, 455 U.S. 209, 215–217, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982) (rejecting claims of implied bias; must prove actual bias); *Goeders v. Hundley*, 59 F.3d 73, 75 (8th Cir.1995) (*Phillips* requires a showing of actual bias). *See also Johnson v. Armontrout*, 961 F.2d 748, 752–53 (8th Cir.1992). As discussed above, Tucker has failed to show actual bias on the part of Johnson.

Tucker's counsel scrupulously examined Johnson. The Court had the opportunity to observe her demeanor and consider her responses. While some of Johnson's responses may seem incredible to Tucker, the Court cannot find them so. Johnson is a quiet, reserved individual. It is clear, judging from her demeanor, that she is a private person. She responded to questions literally. She "knew of Hayes" but did not know him, in the sense of being friends or having conversations, until after he was released from prison. Her distinction is rational, not far-fetched. Furthermore, the Court cannot find that her interpretation was meant to deceive the Court or the parties, or that she in any way intentionally withheld the truth. She just did not feel that her relationship to Hayes and the McIntosh family was important, or that it had any bearing on her ability to be fair and impartial. She stated credibly that when she was asked general questions about her ability to be fair and impartial she did not raise her hand because she though she was being truthful.

Tucker finds it incredible that Johnson denied knowledge of the drug convictions of Hayes, McIntosh, or Crawford, although she had married one and dated the other two. She denied knowledge of Tommy McIntosh's highly publicized release from prison. She did not know how Hayes was released from

---

12. Walker's assertions that Hayes was upset and angry about his sentence as well as with Tucker are somewhat suspect. Walker claims to have visited Hayes frequently while the latter was incarcerated. Yet he did not recall hearing anything about the results of the habeas corpus petition. Furthermore, despite being good friends with Hayes, Walker did not know of Hayes' marriage to Johnson, had not been invited to the wedding reception, and did not even know Johnson.

In addition, the Court notes that Walker cannot be considered a completely disinterested witness. At the hearing Walker admitted to having business dealings with Tucker, particularly regarding Tucker's cable television business and Castle Sewer and Water. Walker was, in fact, questioned by the FBI and the Office of Independent Counsel, in February, 1996, about the possibility of being a potential witness concerning the legislation involving Castle Sewer and Water. Furthermore, Walker and Tucker have been political allies over the years.

prison, that is, as a result of the granting of a habeas corpus petition. Tucker notes that Johnson is intelligent, and completed two and a half years of college. She has a banking degree from a business college. She described herself in her juror questionnaire as "occasionally involved in politics" and well informed on local news events.

The Court, again after viewing Johnson's demeanor and considering her testimony, finds that Johnson is not politically involved and pays little attention to politics. According to Hayes, she did not keep up with the news. She is not interested in the beliefs of Say McIntosh and pays little attention to his public activities. As she stated at the hearing, Say's activities didn't interest her.

In sum, the Court finds that Tucker has failed to establish that Hayes concealed her relationship to Hayes and the McIntosh family.

*Improper Communication*

Tucker also contends that Johnson was subjected to outside influence during the trial. "To gain a new trial on the ground of juror misconduct, a movant must present evidence that is not barred by Federal Rules of Evidence 606(b) and that establishes grounds recognized as adequate to overturn a jury verdict." 137 F.3d at 1030. Federal Rule of Evidence 606(b) generally bars testimony regarding intrajury communications. "The rule's two exceptions allow testimony regarding extraneous prejudicial information and outside influences brought to bear on the jury." *United States v. Caldwell,* 83 F.3d 954, 956 (8th Cir.1996). "[E]xposure of the jury to improper communications or extrinsic material evidence creates a presumption of prejudice, and therefore a presumption of an infringement of the defendant's Sixth Amendment right to trial by an impartial jury." *United States v. Melius,* 123 F.3d 1134, 1139 (8th Cir.1997), *cert. denied,* ——

U.S. ——, 118 S.Ct. 871, 139 L.Ed.2d 767 (1998) (citations omitted).

Tucker relies on Walker's assertions that Hayes stated that he discussed the trial with Johnson *during the trial.* Walker had made that statement in his affidavit which was submitted in support of the motion for new trial.[13] He admitted that the statement "during the trial" contained in the affidavit was put in as a result of additional questions by Tucker or his counsel during the drafting of the affidavit.

At the hearing, Walker could not recall whether Hayes said that the communications occurred during the trial. Furthermore, Walker admitted that he did not know the content of any conversations between Hayes and Johnson and Hayes did not tell Walker that he had said anything improper to his wife during the trial. Hayes and Johnson deny that they had any discussions about the trial during the trial. That such conversations took place would require the Court to engage in speculation and conjecture.

Johnson testified that she did not have any conversation or contact with Tommy or Say McIntosh during the trial.[14] She stated that no one ever attempted to discuss the trial with her. Her mother-in-law, Emma Roland, stated that she asked Johnson how the trial was going. Johnson would respond "alright" or something similar. As Roland noted, Johnson is not a talkative person.

■ That Say or Tommy McIntosh knew of Johnson's presence on the jury also is not probative of improper influence. As mentioned above, Johnson's participation as a juror was public knowledge. There is absolutely no evidence that anyone, particularly anyone associated with Say McIntosh, attempted to influence Johnson or discuss the trial with her.[15] Johnson testified credibly,

13. Walker testified that he discussed the matter with Tucker's counsel before reducing it to writing. Walker stated that some of the information was added to the affidavit as a result of questioning by both Tucker and his counsel.

14. Tommy McIntosh came to the house on Tyler Street during the trial, but at the most he exchanged only pleasantries with Johnson. There is no evidence that they had a conversation about the trial.

15. Say McIntosh attended the trial on several occasions. No one testified that they observed any improper contact between McIntosh and Johnson, or that McIntosh in any way attempted to "communicate" with Johnson while she was seated in the jury box. There is also no evidence that Johnson saw any of McIntosh's demonstrations or protests outside the courthouse during the trial.

in the Court's opinion, that she did not have any conversations with Hayes, or any McIntosh family member, about the trial during the trial. The Court is persuaded that Johnson heeded the Court's regular admonition not to discuss the case with anyone.

In sum, the Court finds that Tucker just has not met his burden of demonstrating that improper communications occurred during trial, that Johnson received any extraneous communication from any source or that was subjected to improper influence. Thus, the Court finds that Tucker's Sixth Amendment right to an impartial jury was not violated.

Accordingly, the motion for new trial is denied.