# United States Court of Appeals
### For the Eighth Circuit

_____

No. 15-3070

_____

United States of America

*Plaintiff - Appellee*

v.

Akram Hameed Muhammad

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: February 12, 2016
Filed: April 26, 2016

_____

Before SMITH and COLLOTON, Circuit Judges, and GRITZNER,[1] District Judge.

_____

GRITZNER, District Judge.

A jury convicted Akram Hameed Muhammad (Muhammad) of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). On

---

[1]The Honorable James E. Gritzner, Senior United States District Judge for the Southern District of Iowa, sitting by designation.

appeal, Muhammad challenges the district court's[2] denying his motion for judgment of acquittal and his post-trial motion for a new trial due to insufficiency of the evidence and juror misconduct. We affirm.

## I.     BACKGROUND

On December 15, 2014, the Grand Jury indicted Muhammad on one count of being a felon in possession of a firearm. Muhammad's arrest and indictment arose out of federal and state law enforcement officers' efforts to execute a federal arrest warrant on another individual, Veltrez Black (Black). Surveillance officers observed Black exiting an apartment building with Muhammad and another individual. The surveillance officers witnessed the three men enter a parking lot and approach a Buick Rendezvous owned by Black's girlfriend.

At trial, the government called Supervisory Special Agent Brian McCarthy of the Bureau of Alcohol, Tobacco and Firearms (ATF), who was the first agent to arrive on the scene. Special Agent McCarthy testified that after arriving at the parking lot, he exited his vehicle and observed Muhammad approximately 15 feet away behind the open, driver-side rear door of the Buick Rendezvous. Special Agent McCarthy identified himself as a police officer and commanded Muhammad to raise his hands. Special Agent McCarthy testified that the door of the Buick Rendezvous obscured his view of Muhammad's waist and lower half but that Special Agent McCarthy made eye contact with Muhammad through the car door's tinted window.

Special Agent McCarthy observed Muhammad lower his hands to be obscured by the solid portion of the opened car door, pull his hand toward his waist area, and engage in movements "consistent with trying to secrete a firearm." T. Tr. 62. Special Agent McCarthy drew his gun, pointed it at Muhammad, and commanded

---

[2]The Honorable David S. Doty, Senior United States District Judge for the District of Minnesota.

Muhammad to raise his hands. Special Agent McCarthy said that Muhammad then turned right, bent down, and leaned toward the cabin of the Buick Rendezvous. When Muhammad did this, Special Agent McCarthy said that he could see below the car door and saw that Muhammad had also turned his feet to face the cabin of the Buick Rendezvous. Special Agent McCarthy testified that as he moved a few feet forward and to the right to get a better view, Muhammad stood up, backed away from the vehicle, turned toward Special Agent McCarthy, and raised his hands. Other law enforcement officers arrived on the scene and placed Muhammad under arrest.

After Muhammad was secured, Special Agent McCarthy saw a firearm on the floor of the back seat of the Buick Rendezvous, partially hidden under the driver's seat. Special Agent McCarthy testified that he found the firearm where he had seen Muhammad leaning and that there were no other items in that space. Special Agent McCarthy admitted that he had not seen a firearm during this encounter until he saw a Sig Sauer model 250, .45 caliber semi-automatic handgun on the floor of the Buick Rendezvous. The firearm was photographed in its original position as seen by Special Agent McCarthy.

At trial, Muhammad called private investigator Michael Grostyan, who testified that due to the shape of the space beneath the driver's seat in the Buick Rendezvous, an object such as a firearm might slide around on the floor of the vehicle's back seat while the vehicle was in motion. The officers handling the firearm wore gloves. When analyzed, the government found no identifiable DNA or fingerprints on the gun, magazine, or bullets in the firearm.

Muhammad's jury trial began on April 28, 2015. At the conclusion of the government's case, Muhammad moved for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a), which the district court took under advisement. The jury returned a guilty verdict on April 29, 2015, and on April 30, 2015, the

district court entered an order denying Muhammad's motion finding sufficient evidence to sustain his conviction.

On May 29, 2015, Muhammad timely filed a motion for a new trial and a request for an evidentiary hearing due to juror misconduct. Muhammad alleged that a juror's husband took notes throughout the trial; stared at Muhammad's family; eavesdropped on a conversation between Muhammad's counsel and family; and on the second day of trial, the same juror and her husband eavesdropped on a lunch-time conversation between Muhammad's family members. Muhammad further alleged that the juror's husband engaged in non-verbal communication with the juror before the verdict was announced. On July 7, 2015, the district court issued an order denying the motion finding "no colorable evidence of outside influence" to warrant an evidentiary hearing or a new trial. United States v. Muhammad, Cr. No. 14-408 (DSD/HB), 2015 WL 4094078, at *2 (D. Minn. July 7, 2015). On September 9, 2015, the district court sentenced Muhammad to a 96-month term of imprisonment followed by a 3-year term of supervised release. This appeal challenging the denials of his motions for judgment of acquittal and for new trial followed.

## II.    DISCUSSION
### A.    Standard of Review - Denial of Motion for Judgment of Acquittal
"We review de novo the denial of a motion for judgment of acquittal based on the sufficiency of the evidence." United States v. Griffith, 786 F.3d 1098, 1102 (8th Cir. 2015). "We look at the evidence in the light most favorable to the verdict and accept all reasonable inferences that can be drawn from the verdict." Id. "The standard of review is very strict, and we will reverse a conviction only if we conclude that no reasonable jury could have found the accused guilty beyond a reasonable doubt." United States v. Jungers, 702 F.3d 1066, 1068 (8th Cir. 2013) (quoting United States v. Ward, 686 F.3d 879, 882 (8th Cir. 2012)).

Importantly, "we do not review questions involving the credibility of witnesses, but leave credibility questions to the jury." United States v. Ragland, 555 F.3d 706, 715 (8th Cir. 2009) (quoting United States v. Dabney, 367 F.3d 1040, 1043 (8th Cir. 2004)). "Therefore, even '[i]f the evidence adduced at trial rationally supports conflicting hypotheses, we [will] refuse to disturb the conviction.'" United States v. Wilson, 619 F.3d 787, 795 (8th Cir. 2010) (alterations in original) (quoting United States v. Thomas, 593 F.3d 752, 760 (8th Cir. 2010)). "[T]he presence of one possible 'innocent' explanation for the government's evidence does not preclude a reasonable jury from rejecting the exculpatory hypothesis in favor of guilt beyond a reasonable doubt." United States v. Brown, 634 F.3d 435, 439 (8th Cir. 2011) (quoting United States v. Maloney, 466 F.3d 663, 667 (8th Cir. 2006)).

## B.     Sufficiency of the Evidence

Muhammad argues the government did not present evidence sufficient to show that Muhammad, at any time, knowingly possessed a firearm.[3]  Specifically, Muhammad argues that Special Agent McCarthy's testimony – relied upon by the government – did not establish that Muhammad ever possessed the weapon that Special Agent McCarthy saw in the Buick Rendezvous.  Muhammad argues that Special Agent McCarthy could not have seen Muhammad reach his waistband, which was hidden behind the car door interposed between Special Agent McCarthy and Muhammad.  Muhammad characterizes Special Agent McCarthy's testimony that Muhammad's actions were consistent with disposal of a firearm as "not just implausible but impossible" because Special Agent McCarthy could not see Muhammad's waistband and admitted he did not see Muhammad holding a firearm. Appellant's Br. 20.

---

[3]The only contested issue at trial was whether Muhammad knowingly possessed the firearm found in the Buick Rendezvous.

Instead, Muhammad argues a "strong inference" that the firearm in question was already in the Buick Rendezvous can be drawn from the fact that the vehicle belonged to Black's girlfriend and, at the time, Black himself was described as being armed and dangerous.  Id. at 24.

Irrespective of Special Agent McCarthy's testimony that he did not see Muhammad's waistband, it was reasonable for the jury to infer that Muhammad possessed the firearm before it was found on the floor of the Buick Rendezvous. Special Agent McCarthy testified that Muhammad's movements were consistent with disposal of a firearm – including the position of his shoes, the direction he was leaning, and the fact that his hands were hidden behind the car door for a short period of time.  Nothing was found in the back seat area that would otherwise explain Muhammad's movements.  Furthermore, citing United States v. Thibeaux, 784 F.3d 1221 (8th Cir. 2015), Muhammad acknowledges in some circumstances a reasonable jury may find the evidence supports a finding of possession despite law enforcement officers testifying they did not actually see the defendant holding the firearm.  See Appellant's Br. 21.  Special Agent McCarthy's testimony is not rendered "impossible" simply because he did not see Muhammad holding the firearm nor see Muhammad's hands when they were obscured by the door of the Buick Rendezvous.

As did the defendant in Thibeaux, Muhammad asks us to reassess the evidence considered by the jury.  But "[w]e do not weigh the evidence or assess the credibility of the witnesses.  The jury has the responsibility of resolving conflicts or contradictions in testimony, and we resolve any credibility issues in favor of the verdict."  Thibeaux, 784 F.3d at 1225 (quoting United States v. Augustine, 663 F.3d 367, 373 (8th Cir. 2011)).  It is not enough for Muhammad to proffer a "possible 'innocent' explanation for the government's evidence."  Maloney, 466 F.3d at 667 ("A jury might have drawn [the defendant's proffered] inference, but the presence of one possible 'innocent' explanation for the government's evidence does not preclude a reasonable jury from rejecting the exculpatory hypothesis in favor of guilt beyond

a reasonable doubt."). Muhammad correctly notes that based on Special Agent McCarthy's testimony about suspected disposal of a firearm, "[t]here is clearly an inference and a jury could think or assume that that is what Mr. Muhammad was doing." Appellant's Br. 21. Muhammad argues that the jury should have drawn a different inference. We disagree. A reasonable jury could have found that Special Agent McCarthy's testimony established that Muhammad possessed the firearm and quickly disposed of it in the Buick Rendezvous before raising his hands and surrendering to law enforcement. See United States v. Flenoid, 718 F.2d 867, 868 (8th Cir. 1983) (per curiam) ("[T]estimony that the defendant may have placed something in the spot where the police later found the weapon can support a finding of possession."). We will not disturb the jury's verdict.

## C. Standard of Review - Denial of Motion for New Trial

"We review both the district court's handling of allegations of juror misconduct and its denial of the motion for a new trial for an abuse of discretion." United States v. Caldwell, 83 F.3d 954, 955 (8th Cir. 1996). District courts also have "broad discretion" regarding whether to conduct evidentiary hearings regarding juror misconduct allegations. United States v. Johnson, 495 F.3d 951, 981 (8th Cir. 2007).

Allegations of juror misconduct must be supported by evidence that is not barred by Federal Rule of Evidence 606(b), which "generally precludes the testimony of any juror regarding intrajury communications, as well as the testimony of a nonjuror regarding an intrajury statement," except where the testimony concerns "extraneous prejudicial information and outside influences brought to bear on the jury." Caldwell, 83 F.3d at 956. "Extraneous influence includes 'publicity received and discussed in the jury room, matters considered by the jury but not admitted into evidence, and communications or other contact between jurors and outside persons.'" United States v. Wintermute, 443 F.3d 993, 1002 (8th Cir. 2006) (quoting United States v. Vig, 167 F.3d 443, 450 (8th Cir. 1999)). "[T]hird-party communications regarding the substance of the trial are presumptively prejudicial and can constitute

grounds for a new trial unless the government establishes that the contact was harmless to the defendant." Caldwell, 83 F.3d at 956. And "if a party shows that outside contact with the jury presents a reasonable possibility of prejudice to the verdict, he is entitled to a hearing on the matter." United States v. Tucker, 137 F.3d 1016, 1030 (8th Cir. 1998). However, an evidentiary hearing is not necessary if the movant "fails to 'raise a colorable claim of outside influence.'" Wintermute, 443 F.3d at 1002 (quoting United States v. Moses, 15 F.3d 774, 778 (8th Cir. 1994) ("Not every allegation of outside influence requires an evidentiary hearing.")); see also United States v. Caldwell, 776 F.2d 989, 998 (11th Cir. 1985) ("The more speculative or unsubstantiated the allegation of misconduct, the less the burden to investigate."). "Speculation and unsubstantiated allegations do not present a colorable claim of outside influence of a juror." Wintermute, 443 F.3d at 1003.

### D.    Juror Misconduct

In support of his motion for new trial, Muhammad submitted to the district court the affidavits of his mother, ex-significant other, sisters, and brother detailing the alleged juror misconduct. Muhammad, 2015 WL 4094078, at *1. The district court reviewed these affidavits and found that they did not present "colorable evidence of outside influence." Id. at *2. The district court found that the affidavits contained no "specific information" that showed whether the juror and her husband ever talked about the case, instead offering "nothing more than pure speculation." Id. The district court further noted that the allegations that the juror and her husband eavesdropped on a conversation between Muhammad's family members during lunch on the second day of trial lacked credibility because the jury was in deliberations during that time. Id. Muhammad argues that the district court abused its discretion by failing "to inquire further if in fact outside forces influenced the deliberations or verdict." Appellant's Br. 27.

We agree with the district court that Muhammad did not present a colorable claim of outside influence to warrant an evidentiary hearing. One affidavit avers that

a juror's husband took notes during the trial and "continually stared" at Muhammad's family. Appellant's Br. Add. 5. As the district court noted, attendance at a public trial does not suggest improper outside influence. Cf. United States v. Grady, 665 F.2d 831, 836 (8th Cir. 1981) (finding no improper influence where husband of juror was present in courtroom during public motion to suppress proceedings held outside of the presence of the jury).

Two other affidavits allege that the juror and her husband engaged in "non-verbal communication" and that the affiants believed the husband and wife communicated with each other about the trial. Appellant's Br. Add. 8, 10. These allegations do not raise a colorable claim of outside influence because the affidavits contain no indication of what the juror and her husband may have actually discussed. What remains is speculation about what the juror and her husband discussed. Contrary to Muhammad's suggestion, the district court was not compelled to *assume* that a juror's spouse who attends a public trial would discuss the case with that juror. See, e.g., Wintermute, 443 F.3d at 1002-03. Indeed,"[j]urors are presumed to follow the court's instructions," United States v. Patterson, 684 F.3d 794, 799 (8th Cir. 2012), including the admonition not to speak with anyone about the case.

Similarly, another affiant attested that the juror's husband eavesdropped on conversations between Muhammad's family and his defense attorney. The affidavit, however, fails to set forth any details of the allegedly overheard conversation let alone any evidence the details of the conversation made their way back to any juror. The final affiant averred that the juror and her husband were eavesdropping on Muhammad's family during lunch on the second day of trial. However, as the district court observed, this claim lacked credibility because the jury was in deliberations at that time. Muhammad, 2015 WL 4094078, at *2. These speculative and

unsubstantiated allegations simply did not require an evidentiary hearing. See, e.g., Moses, 15 F.3d at 778.[4]

## III.  CONCLUSION

We conclude that the evidence presented at trial was sufficient to support the jury's verdict and that the district court did not abuse its discretion in denying Muhammad's motion for judgment of acquittal, a new trial, or an evidentiary hearing on the allegations of juror misconduct. The judgment of the district court is affirmed.

_____

---

[4]For the first time on appeal, Muhammad argues a new trial is warranted to avoid a serious miscarriage of justice because the verdict was against the weight of the evidence. Appellant's Br. 25. Muhammad, however, did not move for a new trial on this ground. Nor will we construe Muhammad's motion for judgment of acquittal as a motion for new trial based on the sufficiency-of-the-evidence. See United States v. Burrage, 687 F.3d 1015, 1024 n.5 (8th Cir. 2012), rev'd on other grounds, 134 S. Ct. 881 (2014); see also United States v. Martinson, 419 F.3d 749, 752 (8th Cir. 2005) ("Motions for judgment of acquittal are different motions with different substantive standards than motions for a new trial, and we will not construe the filing of one to preserve for our review claims of error relating to the other.").