# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3952

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Kenneth O. Rankin, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  May 15, 2001

Filed:  August 16, 2001

_____

Before WOLLMAN, Chief Judge, HANSEN, Circuit Judge, and SCHREIER,[1]
    District Judge.

_____

WOLLMAN, Chief Judge.

Kenneth O. Rankin appeals from his conviction, arguing that the searches of his
home and car violated the Fourth Amendment and that the district court[2] should have
granted a mistrial for certain juror conduct.  We affirm.

---

[1]The Honorable Karen E. Schreier, United States District Judge for the District
of South Dakota, sitting by designation.

[2]The Honorable E. Richard Webber, United States District Judge for the Eastern
District of Missouri.

## I.

Rankin was convicted of possession with intent to distribute crack cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 851(a). He was subsequently sentenced to 360 months of imprisonment and an 8-year term of supervised release.

On November 30, 1999, Detective Reginald Williams of the St. Louis, Missouri, Metropolitan Police Department obtained a search warrant for the St. Louis residence of Rankin and his mother, 4949 Plover Avenue. In his affidavit in support of the application for the warrant, Detective Williams stated that he had received information from a reliable confidential informant that "Kenneth Rankin," whose description matched that of Rankin, possessed cocaine, crack cocaine, and drug-related paraphernalia at his 4949 Plover residence. The informant had reported that he had observed Rankin sell cocaine out of the residence, that he had seen Rankin convert powder cocaine into crack in the kitchen of the residence, and that he had had conversations with Rankin in which Rankin stated that he owned firearms to protect his drug trade. The affidavit also stated that Detective Williams had conducted periodic surveillance of 4949 Plover during the two weeks prior to the application, had witnessed an unusual amount of foot and vehicle traffic at the house, and had observed Rankin conduct transactions with visitors to the property. Detective Williams wished to execute the warrant while Rankin was at home, so he initiated surveillance of the residence once the warrant had been issued.

On December 9, 1999, at approximately 9:45 p.m., Detective Williams observed Rankin arrive at 4949 Plover, enter the residence, and shortly thereafter exit the house and get into his vehicle, which was parked across the street from the home. Rankin started the car's engine but did not depart. Detective Williams watched as a pedestrian subsequently walked over to the car and exchanged currency with Rankin. The pedestrian then departed, and Rankin drove away.

Believing that the exchange of currency reflected a drug transaction, Detective Williams followed Rankin's vehicle and subsequently pulled him over. After additional officers arrived on the scene, Williams handcuffed Rankin, notified him of his Miranda rights, and informed him of the search warrant.

Rankin was then taken with the officers back to the residence for the search, during which officers seized crack cocaine, cocaine powder, and paraphernalia. Rankin admitted that the $150 on his person was earned during the drug transaction Detective Williams had observed earlier that evening.

Rankin was then arrested and his car seized. Detective Williams directed that the car be searched and towed pursuant to police department guidelines on assets used in the commission of a felony. Police located and seized crack cocaine and baking soda from the trunk.

On appeal, Rankin argues that the district court, which adopted the report and recommendation of a magistrate judge,[3] erroneously denied his motion to suppress the evidence seized from his residence and his car, as well as the statements he made at that time. Rankin also contends that the district court erred in not holding further hearings or declaring a mistrial after certain incidents related to the jurors. Finally, Rankin argues that once the evidence improperly seized is removed from consideration, the evidence is insufficient to support his conviction.

---

[3]The Honorable David D. Noce, United States Magistrate Judge for the Eastern District of Missouri.

## II.

### A. Search of the Residence and Car

"We examine the factual findings underlying the district court's denial of the motion to suppress for clear error and review de novo the ultimate question of whether the Fourth Amendment has been violated." United States v. Nation, 243 F.3d 467, 469 (8th Cir. 2001) (citation omitted). Probable cause exists if there is a fair probability that contraband or evidence of a crime will be found in a particular place. Id. We will uphold a judicial determination of probable cause if we believe that there was a substantial basis for concluding that a search would uncover evidence of wrongdoing. Id. at 470-71. "We emphasize that probable cause is to be determined under a totality-of-the-circumstances approach." United States v. LaMorie, 100 F.3d 547, 553 (8th Cir. 1996).

Rankin first argues that the search warrant was not based on probable cause because the information was stale when the warrant was executed. He bases this argument on a statement made by the confidential informant after the warrant had been issued to the effect that Rankin had moved "most of his . . . crack" out of the residence. Rankin argues that Detective Williams received this information before the search and thus was aware that the warrant was stale. The government responds that Detective Williams received that information after December 9, 1999, that even had it been made known to the detective before the warrant was executed there was still sufficient evidence of Rankin's continuing drug-related activity at the residence, and that, in any event, the residence could lawfully be searched for paraphernalia.

We agree with the district court that the warrant was supported by probable cause. Detective Williams's affidavit supporting the warrant, even when read in the

-4-

light of the additional information from the confidential informant, would give a reasonable person reason to suspect that items relating to the distribution of crack cocaine would be found at 4949 Plover. Detective Williams had information from a reliable informant, who had seen Rankin cook and sell drugs, that Rankin was selling drugs from the residence. Detective Williams had also surveilled the residence and observed many short-term visits consistent with drug trafficking and numerous transactions he believed to be drug-related. See LaMorie, 100 F.3d at 554 (time factors relevant but must be viewed in the context of a particular case and ongoing nature of the crime charged). Whatever the timing of the statement that most of the drugs had been moved, the informant indicated only that most, not all, of drugs had been moved. Thus, the information did not render the warrant stale. Cf. United States v. Williams, 10 F.3d 590, 594-95 (8th Cir. 1993) (eight-day delay not unreasonable when informant testified that one shipment of drugs was gone but new would be arriving; better practice is to get new warrant but search valid given ongoing nature of crime). When viewed in the light of the totality of the circumstances, there was a substantial basis for concluding that a search of the residence would uncover evidence of cocaine trafficking.

We next turn to Rankin's argument concerning the suppression of the evidence found in the trunk of his vehicle. The district court found that the officers lawfully seized the vehicle for asset forfeiture because Detective Williams had observed its involvement in a drug transaction. The court concluded that the subsequent search of the vehicle was a valid inventory search.

In light of our affirmance of the district court's ruling on the search of the residence, Rankin's argument that his post-seizure admission should have been suppressed fails, as does his argument that his car should not have been seized. At oral argument, Rankin additionally contended that the record contains no evidence regarding the particularized police procedures followed when the car was searched. Because this

argument was neither raised in the district court nor in the briefs on appeal, we decline to consider it.

Rankin's car was lawfully seized. Vehicles used to facilitate drug transactions are forfeitable to the United States. United States v. Walker, 900 F.2d 1201, 1204 (8th Cir. 1990) (per curiam). To support forfeiture, the "government must establish probable cause amounting to more than a mere suspicion to believe the property was used to facilitate drug transactions." Id. Detective Williams personally observed Rankin conduct a drug transaction from his vehicle, which Rankin later confirmed.

"Once the car was legally seized . . . the arresting officers were entitled to inventory the contents of the car and take possession of the items found therein." O'Reilly v. United States, 486 F.2d 208, 210 (8th Cir. 1973); see also Walker, 900 F.2d at 1205 (warrantless search may be conducted on vehicle seized for forfeiture purposes). The central inquiry in determining whether such an inventory search is reasonable is a consideration of the totality of the circumstances. United States v. Marshall, 986 F.2d 1171, 1174 (8th Cir. 1993). "[I]nventory searches conducted according to standardized police procedures, which vitiate concerns of an investigatory motive or excessive discretion, are reasonable." Id.

We conclude that the district court did not err in its finding that the search of Rankin's vehicle was a valid inventory search. Detective Williams testified that he seized and towed the vehicle pursuant to department guidelines on asset forfeiture. There is no indication that the search was a subterfuge for a "general rummaging" for incriminating evidence. See id. at 1175 (citation omitted). Accordingly, the district court did not err in allowing the items from the trunk to be admitted into evidence.

Because we have affirmed the district court's admission of the evidence seized from Rankin's residence and car, Rankin's challenge to the sufficiency of the evidence fails.

## B. Jury Conduct

We review the district court's handling of claims of juror misconduct for abuse of discretion.  United States v. Caldwell, 83 F.3d 954, 955 (8th Cir. 1996).

Rankin contends that the district court erred by not questioning jurors individually as to whether, as they left the courtroom for lunch, they may have seen a plain-clothed federal marshal conferring with one of Rankin's defense witnesses in the hallway outside of the courtroom.  The district court held a hearing on the matter and concluded that the jurors "pass down the jury room down the hall in the other direction" so that it was unlikely that they had seen the conversation taking place.  The court also noted that the marshal was in plain clothes similar to that of the defense's investigator, spoke quietly, and did not enter the courtroom, and that the witness subsequently voluntarily accompanied the marshal.  We agree with the government that Rankin's argument on this point is based entirely on speculation.  Even if it was certain that jury members had seen the conversation, we do not believe that such an interaction must necessarily be viewed as prejudicial to Rankin.  Accordingly, the district court did not abuse its discretion in concluding that the incident did not require further action.  Cf. United States v. Cheyenne, 855 F.2d 566, 568 (8th Cir. 1988) ("We give substantial weight to the trial court's appraisal of the prejudicial effects of extraneous information on the jury.").

Rankin also argues that the court should have granted a mistrial because, immediately before Rankin testified, one juror, apparently frustrated with the numerous conferences held outside the presence of the jury, stated that it was discourteous to the jury members to have so many delays during trial.  There is no evidence to suggest, however, that the juror was offended particularly by either the government or the defense, rather than by the delays in general; Rankin presents nothing more than conclusory allegations of prejudice.  To prevail on his claims of juror misconduct, Rankin must present evidence of juror misconduct that is not barred by the rule of juror

incompetency and is sufficient to establish grounds recognized as adequate to overturn the verdict. We conclude that he has not done so. See Caldwell, 83 F.3d at 956 (juror comments that "I've heard all of this I need to hear" and "this is just a bunch of crap" insufficient to impeach jury's verdict). The district court did not abuse its broad discretion in refusing to conduct further inquiry and grant a mistrial. See id.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.