# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2634

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff - Appellant, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * District of Minnesota. |
| Jason Mark Kennedy, | * |
| | * |
| Defendant - Appellee. | * |

_____

Submitted: December 16, 2004
Filed:  November 7, 2005

_____

Before BYE, JOHN R. GIBSON, and GRUENDER, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

The United States appeals the order of the district court[1] granting a motion to suppress two packages of methamphetamine and more than $6,000 in cash found during the search of the trunk of Jason Mark Kennedy's automobile.  This evidence led to Kennedy's indictment for possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii).  The government argues that there was probable cause to search the car pursuant to the automobile exception to the

_____

[1] The Honorable  Joan N. Ericksen, United States District Judge for the District of Minnesota.

warrant requirement, or, in the alternative, that the search was conducted pursuant to a valid impound and inventory policy. Kennedy argued to the district court that there was no probable cause at the time of the search because there was no evidence of when contraband was last seen in his vehicle and that there was no evidence that a valid inventory search would have uncovered the hidden contraband. The district court suppressed the evidence, and we affirm its order.

## I.

Dana Ruud reported to the Coon Rapids Police Department that Kennedy, her ex-boyfriend, had entered her residence, had taken her safe, and was leaving driving a black Chrysler 300M. She gave the license plate number and Kennedy's address to the dispatcher, who assigned Officer Abbott to investigate the call. The officer's computer check confirmed that the license plate number was registered to Kennedy, to a 1999 Chrysler 300M, and to the address supplied by Ruud. The officer also learned that Kennedy's driver's license was suspended and there was a possible outstanding felony warrant for his arrest from the state of Georgia.

On the way to Ruud's residence, Officer Abbott saw a black Chrysler with a license plate matching the one broadcast from dispatch. When the car stopped, Officer Abbott pulled up behind it and activated his lights. As Kennedy started to step out of the driver's side, the officer ordered him back into the vehicle and obtained his driver's license. Officer Abbott questioned Kennedy, placed him under arrest for driving without a license,[2] and pat-searched him, finding a large amount of cash in his pocket. Kennedy told the officer that he had been to Ruud's home to collect $6,000 that she owed him, and that he had left rather than escalate the verbal dispute. Another squad car arrived, and Officer Abbott conducted an initial inventory search

---

[2] Kennedy does not contest his arrest.

and arranged to have the car towed to the impound lot pursuant to Coon Rapids Police Department procedure.

With Kennedy in the back seat of the squad car, Officer Abbott drove to Ruud's residence and interviewed her about the altercation. She told the officer that Kennedy had entered her home without permission and had refused to leave when directed to do so. Ruud described a struggle, after which Kennedy took the safe and drove away. He returned shortly thereafter and threw the safe out of the car and onto the pavement, before leaving again. Ruud told the officer that she and Kennedy had previously lived together, and, although they had not lived together for the past six months, they were still engaged in a sexual relationship.

Most significant for our purposes is the conversation between Ruud and the officer as he was about to leave. Officer Abbott testified that Ruud told him that Kennedy "deals in a lot of methamphetamine" and that he "keeps" it underneath a loose speaker in the trunk of his car. She said she had seen him pulling out the speaker and placing the narcotic in a box underneath it and had seen him with methamphetamine on more than one occasion. Officer Abbott testified that "she was extremely adamant" that he look under the speaker in the trunk and that he found Ruud to be reliable because the other information she provided had been corroborated. However, Officer Abbott acknowledged that Ruud gave no indication of the last time she had seen Kennedy with the drug.

After his discussion with Ruud, Officer Abbott drove his squad car back to Kennedy's vehicle, which was still on the street being readied for tow.[3] He opened

---

[3] The record reveals, although the magistrate judge made no such finding, that Abbott contacted his captain, advised him of the information regarding the possible narcotics, and asked whether he should obtain a search warrant for the vehicle. Captain Snell advised him to perform an impound inventory as normal for a suspended driver, but also to check under the speakers where Ruud indicated the

the trunk, looked at the speakers, and saw that one was not screwed down. He lifted it and found two large packages of methamphetamine, along with more than $6,000 in cash.

Kennedy was indicted for possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii). A motion to suppress the evidence obtained from Kennedy's trunk was referred to Magistrate Judge Jonathan Lebedoff for a report and recommendation. The magistrate judge recited the facts essentially as appears above. His report concluded that Ruud had failed to provide information critical to a determination of probable cause, in that Officer Abbot had assumed that the information she provided was not stale without having ascertained its recency. The report also concluded that while a full inventory search of the vehicle would have been proper, there was no evidence that such a search, absent the stale information from Ruud, would have uncovered the evidence hidden under the speaker in Kennedy's trunk. The district court accepted the magistrate judge's recommendation, and the evidence, narcotics and cash, was thus suppressed. The Government appealed.

## II.

We review the trial court's ruling on a motion to suppress de novo, "evaluating only for clear error, however, any findings of fact." United States v. Smith, 266 F.3d 902, 904 (8th Cir. 2001). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. Sanders, 341 F.3d 809, 818 (8th Cir. 2003). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact,

_____

narcotics were hidden.

it would have weighed the evidence differently." United States v. Tucker, 243 F.3d 499, 506 (8th Cir. 2001) (quoting Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985)).

The Fourth Amendment of the Constitution secures persons against unreasonable searches and seizures. U.S. Const. amend. IV. Searches conducted without a warrant are per se unreasonable, subject to a few well-established exceptions. United States v. Hill, 386 F.3d 855, 858 (8th Cir. 2004). In the case of a warrantless search, the government bears the burden of establishing an exception to the warrant requirement. Id. (citing Coolidge v. New Hampshire, 403 U.S. 443, 455 (1971)).

The so-called "automobile exception" permits police to conduct a warrantless search of an automobile if, at the time of the search, they have probable cause to believe that the vehicle contains contraband or other evidence of a crime. United States v. Wells, 347 F.3d 280, 287 (8th Cir. 2003) (citing United States v. Riedesel, 987 F.2d 1383, 1389 (8th Cir. 1993); Carroll v. United States, 267 U.S. 132, 158-59 (1925)). Probable cause sufficient to justify a search exists where, in the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Illinois v. Gates, 462 U.S. 213, 238 (1983); United States v. Gleich, 397 F.3d 608, 612-13 (8th Cir. 2005). In determining whether an officer had probable cause to search, courts apply a common sense approach and consider all relevant circumstances. Gleich, 397 F.3d at 612.

The Government bases its claim that Officer Abbott had probable cause to believe that there were narcotics in Kennedy's trunk almost exclusively on the

information provided by Ruud.[4] Kennedy argues, and the magistrate judge found, that the undated information was too stale to support probable cause.

It is axiomatic that probable cause must exist at the time of the search and not merely at some earlier time. United States v. Formaro, 152 F.3d 768, 771 (8th Cir. 1998). "There is no fixed formula for determining when information has become stale." Smith, 266 F.3d at 904. Rather, the timeliness of the information depends on the circumstances of the case, including the nature of the crime under investigation and the property sought in the search. United States v. Gibson, 123 F.3d 1121, 1124 (8th Cir. 1997).

In light of the corroborated information Ruud provided regarding events occurring that day and the officer's knowledge of her relationship with Kennedy, the magistrate judge concluded that it was reasonable for Officer Abbott to believe that Kennedy had hidden narcotics under a speaker in his vehicle at some point in time. Critically, however, the magistrate judge found that Ruud's statements did not provide a factual basis for Abbott to conclude that there were drugs in the vehicle at the time of the search because "Ruud provided Officer Abbott with no specific time frame for her knowledge." United States v. Kennedy, No. 04-079, Report and Recommendation at 11-12 (D. Minn. Apr. 26, 2004). This finding was not clearly erroneous. To hold otherwise, we would have to conclude that the magistrate judge's "view of the evidence was unreasonable and impermissible" and be "left with the definite and firm conviction that a mistake has been committed." United States v. Sanders, No. 04-

---

[4] On appeal the Government also argues that the large amount of cash found on Kennedy's person when he was arrested also supported the determination of probable cause because large amounts of cash are typically associated with sales of narcotics. However, at the suppression hearing Officer Abbot testified neither to his experience nor his belief in this regard. In addition, Officer Abbott verified the amount of cash found on Kennedy's person only after he had conducted the search of Kennedy's trunk that turned up the narcotics.

3601, 2005 WL 2319124 at *8-9 (8th Cir. Sept. 23, 2005) (Gruender, J. dissenting) (discussing the deference an appellate court must accord to the finder of fact at a suppression hearing).  Because the magistrate judge's "account of the evidence is plausible in light of the record viewed in its entirety, [we] may not reverse it."  Id. at *8.

It was the Government's burden to demonstrate that Officer Abbott had probable cause at the time of his warrantless search, and not merely at some earlier time.  Formaro, 152 F.3d at 771.  The Government contends that it provided the time frame the magistrate judge found lacking because Officer Abbott testified that Ruud used the present tense in relaying her information.  Although an informant's use of the present test is some indication of present probable cause, the ultimate determination does not turn solely upon whether the verbs used by the hearsay informant end in "s" or "ed."  Rather, the question of whether information of an indeterminate recency establishes probable cause that contraband or evidence of a crime will be found in a particular location at a particular time "depends on the circumstances of the case," including the crime under investigation and the property sought in the search.  See Smith, 266 F.3d at 904; see also W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 3.7(b) (4th ed. 2004).

As the magistrate judge concluded, considering the nature of the crime under investigation and the property sought, Ruud's use of the present tense was insufficient to satisfy the Government's burden.  Where suspected criminal activity is continuing in nature and the property is not likely to be destroyed or dissipated, the passage of time may be less significant.  Gleich, 397 F.3d at 613.[5]  However, information of an

_____

[5] For example, in United States v. Maxim, 55 F.3d 394, 397 (8th Cir.1995), we held that information four months old, or even three years old, may supply probable cause for a warrant to search the home of a person suspected of illegal possession of a firearm, due to the continuing nature of the possession offense and the tendency for firearms enthusiasts to keep their weapons for long periods of time.  See also United

-7-

unknown and undetermined vintage relaying the location of mobile, easily concealed, readily consumable, and highly incriminating narcotics could quickly go stale in the absence of information indicating an ongoing and continuing narcotics operation. Cf. Smith, 266 F.3d at 904-05 (information in the affidavit regarding three controlled buys at defendant's residence occurring three months prior to application for search warrant not stale); United States v. Hartje, 251 F.3d 771, 775 (8th Cir. 2001) (lapse of one month between five methamphetamine transactions occurring over the course of two months and application for search warrant did not render information stale in light of the ongoing nature of crimes); Formaro, 152 F.3d at 771 (controlled buy made two and one-half weeks before the application for a warrant not stale). Here, Kennedy was not the subject of an ongoing narcotics investigation; he was stopped on suspicion that he was involved in a burglary and arrested for driving without a license. Police had nothing to go on other than one isolated conversation with a former girlfriend, who, despite her apparent eagerness to enmesh Kennedy in further legal troubles, failed to provide Officer Abbott with a key piece of information. Under these circumstances, the magistrate judge's finding that Officer Abbot had no reason to believe that narcotics were currently hidden in the vehicle was not clearly erroneous.

In addressing the Government's argument that Ruud's use of the present tense established present probable cause, the magistrate judge relied on United States v. Button, 653 F.2d 319, 324 (8th Cir. 1981). As the dissent correctly notes, the rule in Button does not control the outcome of this case, as Button addressed the propriety of a delay between the time at which information relayed in the present tense is provided to law enforcement and their eventual application for a search warrant. Button, 653 F.2d at 324-25. Nonetheless, Button's warning about the dangers of relying on a hearsay informant's use of the present tense to establish present probable cause bears repeating:

---

States v. Chrobak, 289 F.3d 1043, 1046 (8th Cir. 2002) (information more than three months old not stale as agent knew from professional experience that child pornographers typically retain their pornography for long periods of time).

> The present tense is suspended in air; it has no point of reference . . . . Officers with information of questionable recency could escape embarrassment by simply omitting averments as to time, so long as they reported that whatever information they received was stated to be current at that time. Magistrates would have less opportunity to perform their "natural and detached" function. Indeed, if the affidavit in this case be adjudged valid, it is difficult to see how any function but that of a rubber stamp remains for them.

Button, 653 F.2d at 325 (8th Cir. 1981) (quoting Rosencranz v. United States, 356 F.2d 310, 316 (1st Cir. 1966)). Button's requirement—that law enforcement have a reason to believe contraband is currently present in the place to be searched—is no less necessary in justifying a warrantless search than it is in the application for a warrant. Indeed, it would be perverse to relax the stringency of this requirement in this context because a warrantless search is, by law, presumptively unreasonable absent the Government's proof to the contrary. See Hill, 386 F.3d at 858 (8th Cir. 2004). As the magistrate judge concluded, the Government failed to prove that probable cause existed at the time of the search, as opposed to some earlier time. Because there was no probable cause to search the vehicle for narcotics, the evidence must be suppressed.

## III.

The Government argued, and the magistrate judge concluded, that Kennedy's car was properly stopped, he was properly arrested for driving while suspended, and his car was properly impounded pursuant to the impound policy of the Coon Rapids Police Department. Because the impoundment was proper, the Government argues that the hidden contraband was seized during a valid inventory search.

Police may conduct a warrantless search of a lawfully-impounded vehicle even in the absence of probable cause. Florida v. Wells, 495 U.S. 1, 4 (1990); United

States v. Petty, 367 F.3d 1009, 1011-12 (8th Cir. 2004). The inventory search exception to the warrant requirement is premised on an individual's diminished expectation of privacy in an automobile coupled with the governmental interests in inventorying the vehicle's contents: to protect an owner's property while the automobile is in custody, to ensure against claims of lost, stolen, or damaged property, and to guard police from danger. South Dakota v. Opperman, 428 U.S. 364, 369 (1976).

The central question in evaluating the propriety of an inventory search is whether, in the totality of the circumstances, the search was reasonable. United States v. Rankin, 261 F.3d 735, 740 (8th Cir. 2001). "[I]nventory searches conducted according to standardized police procedures, which vitiate concerns of an investigatory motive or excessive discretion, are reasonable." Id. (quoting United States v. Marshall, 986 F.2d 1171, 1174 (8th Cir. 1993)). Adherence to standardized procedures is necessary to ensure that the search is not merely "a ruse for general rummaging in order to discover incriminating evidence," since inventory searches are often conducted in the absence of the safeguards of a warrant and probable cause. Wells, 495 U.S. at 4 (1990).

Requiring an officer to conduct an inventory search pursuant to "standardized criteria" or an "established routine" does not mean that the search must be made in a "totally mechanical" fashion. Petty, 367 F.3d at 1012 (quoting Wells, 495 U.S. at 4). Indeed, police "may keep their eyes open for potentially incriminating items that they might discover in the course of an inventory search, as long as their sole purpose is not to investigate a crime." Marshall, 986 F.2d at 1176. However, the Constitution does not permit police to "raise the inventory-search banner in an after-the-fact attempt to justify what was ... purely and simply a search for incriminating evidence." Id. at 1175.

The Coon Rapids Police Department has a standardized impound and inventory search policy, codified in the Coon Rapids Department Manual, which was in effect at the time of the search. The policy provides that vehicles involved in a crime and which are evidence or contain evidence are subject to towing or impoundment. There is no dispute that the vehicle was properly impounded pursuant to this standardized policy. The issue is whether the inventory search conducted by Officer Abbott likewise complied with department procedure.

The department's inventory search procedures require an inventory of the impounded vehicle's contents. In addition, "[i]f there is personal property of value not permanently affixed in a vehicle, the [officer] shall list the contents on the tow sheet." The policy also requires an inventory of "the contents of the trunk and the glove box" after making "every reasonable attempt to open these areas." If these areas are locked and no key is available, the officer "shall not do damage to the vehicle in an attempt to open these areas," but if an officer has "probable cause to believe there is evidence of a crime in these locked areas, they should place a 'hold' on the vehicle until a search warrant can be obtained." The policy also provides that "[o]bjects such as boxes, briefcases, or other closed containers should be opened and the contents inventoried." Once again, if the container is locked, officers may attempt to open the container without doing damage, but if the container cannot be opened the officer "must determine if they have probable cause to obtain a search warrant for the container."

The Government advances a number of arguments in support of its contention that Officer Abbott's search beneath the loose speaker in Kennedy's trunk was conducted pursuant to the department's policy. First, the Government claims that the loose speaker qualifies as "property of value not permanently affixed," and that the guidelines' directive to list such property on the tow sheet necessarily requires the officer to handle the property. Next, the Government argues that the area beneath the speaker is the functional equivalent of the "boxes, briefcases, and containers" the department guidelines permit officers to search.

Fatal to both of the Government's arguments is the lack of evidence produced at the suppression hearing to support them. As with any warrantless search, the Government bears the burden of demonstrating the need for an exemption from the warrant requirement and that its conduct fell within the bounds of the exception. Marshall, 986 F.2d at 1173 (citing Mincey v. Arizona, 437 U.S. 385, 390 (1978)). In the context of an inventory search this burden requires the government to produce evidence that impoundment and inventory search procedures were in place and that law enforcement complied with those procedures. Id. at 1175-76 (holding that district court erred in admitting evidence seized pursuant to inventory search when government produced insufficient evidence of compliance with standardized procedures).

All the Government established at the suppression hearing is that procedures were in place. It failed to establish compliance with those procedures. There was no testimony as to what specific places would have been searched absent the information from Ruud. Specifically, there was no evidence that an officer performing an inventory search would have lifted a stereo speaker out of the box in which it was mounted pursuant to the policy's requirements that "personal property of value not permanently affixed" be listed on the tow sheet. Nor was there evidence that a searching officer would construe "boxes, briefcases, and containers" to include the area beneath a stereo speaker. Absent such evidence, the Government has failed to demonstrate that the officer conducted the search in compliance with the department's inventory search policy, and thereby failed to demonstrate that the inventory search exception applies. See Marshall, 986 F.2d at 1174-76.

## IV.

The judgment of the district court is affirmed.

GRUENDER, Circuit Judge, dissenting.


I conclude that the magistrate judge made an error of law in the analysis of probable cause that precluded a proper consideration of the totality of the circumstances and produced an erroneous finding of staleness. Considering the circumstances of the case absent the magistrate judge's legal error, a reasonable person in Officer Abbott's position could believe there was a fair probability that methamphetamine would be found under the speaker in Kennedy's trunk. Therefore, I respectfully dissent.


I


The Court states that the magistrate judge made a finding of fact that there was no evidentiary basis from which Abbott could have concluded Ruud's information about the presence of methamphetamine in the speaker box was current. The Court then emphasizes the deference owed to the magistrate judge's factual finding, see Smith, 266 F.3d at 904, and holds the factual finding was not "clearly erroneous." However, the magistrate judge made a serious error of law in evaluating the currency of the information for probable cause purposes. As explained below, the magistrate judge, relying on United States v. Button, 653 F.2d 319, 324 (8th Cir. 1981), ruled as a matter of law that Ruud's information must be assumed to stem from the most remote part of the time frame in which Ruud could have witnessed Kennedy's methamphetamine activity. Thus, the magistrate judge's assumption that Ruud's knowledge was six months old is a conclusion of law, which we review de novo. Smith, 266 F.3d at 904.


\

-13-

The magistrate judge stated:

> In addressing the staleness of information in a search warrant, the <u>Button</u> court noted that "when the courts are forced to make an assumption as to when transactions occurred 'within' a given period, for purposes of determining probable cause, it must be assumed that the transactions took place in the most remote part of the given period . . ." . . .
>
> Ruud provided Officer Abbott with no specific time frame for her knowledge. **This Court must assume that the transactions witnessed by Ruud took place in the most remote part of the given period.** <u>See</u> <u>Button</u>, 653 F.2d at 324. The only time frame presented to the court at the motions hearing would be that of Ruud and Defendant's relationship . . . . **The Court must consider Ruud's knowledge to stem from, at best, at least six months previous.**

<u>United States v. Kennedy</u>, No. 04-079, Report and Recommendation at 9, 11-12 (D. Minn. Apr. 26, 2004) (citation omitted) (emphasis added).

The Court characterizes part of the above quote, "Ruud provided Officer Abbott with no specific time frame for her knowledge," as a factual finding that there was no evidentiary basis from which Abbott could have concluded Ruud's information was current. <u>Supra</u> at 6. Read in context, however, it is clear that the magistrate judge merely was stating that Ruud did not specify a date and time at which she had last known Kennedy to place methamphetamine under the loose speaker. Regardless of the specificity of Ruud's statement, the proper inquiry for the magistrate judge was to analyze whether, "given the totality of the circumstances, a reasonable person could believe there [was] a fair probability" that methamphetamine was currently under the speaker. <u>Wells</u>, 347 F.3d at 287 (quoting <u>United States v. Fladten</u>, 230 F.3d 1083, 1085 (8th Cir. 2000)). Instead, the magistrate judge first felt compelled by <u>Button</u> to "assume that the transactions witnessed by Ruud took place in the most remote part"

-14-

of the entire time frame during which Ruud had been observing Kennedy's conduct. The magistrate judge found that this time frame stretched from at least six months prior to Ruud's statement up through the time of her statement and then assumed, based solely on <u>Button</u>, that the information was current at the most remote part of that time frame, six months previous. Report and Recommendation at 11-12. The magistrate judge's assumption preempted any consideration of whether, given the totality of the circumstances, a reasonable person in Officer Abbott's position could believe there was a fair probability that methamphetamine was currently under the speaker.

I conclude that the magistrate judge erred in applying the holding of <u>Button</u> to the facts of this case. The <u>Button</u> panel held that the information in an affidavit supporting a search warrant for a home was too stale to establish probable cause where the police officer affiant averred only that "[t]he information he received from the first informant came to him 'over the past six months'" prior to the date of the affidavit. 653 F.2d at 324. Although the affidavit reported the informant's statement that the defendant "is currently supplying Angel Dust to the person close to informant," <u>id.</u> at 325, the informant's use of the present tense did not establish the currency of the information because "[t]he present tense is suspended in the air; it has no point of reference. It speaks, after all, of the time when an anonymous informant conveyed information to the officer, which could have been a day, a week, or months before the date of the affidavit." <u>Id.</u> (quoting <u>Rosencranz v. United States</u>, 356 F.2d 310, 316 (1st Cir. 1966)). In other words, faced with an indeterminate time lapse of up to six months between the anonymous informant's statement that the defendant "is currently supplying Angel Dust" and the police officer's decision to act on that statement, the <u>Button</u> panel assumed as a matter of law that the informant's knowledge came from the most remote part of the time period during which the police officer was in contact with the informant.

The circumstances of the instant case, in contrast to <u>Button</u>, involved no indeterminate time lapse between the informant's statement to the police officer and the officer's decision to act on that statement. Instead, Officer Abbott acted immediately on Ruud's statement that Kennedy "deals in a lot of methamphetamine" and "keeps" it under a loose speaker in his car. Because there is no issue of delay in this case, the magistrate judge had no discernible rationale to extend the assumption mandated by <u>Button</u> to a case involving immediate action under the automobile exception.[6] By erroneously holding at the outset that Ruud's information must be assumed to be six months old, the magistrate judge never properly applied "the totality of the circumstances" analysis of probable cause that the majority purports to uphold. Obfuscating the analysis by importing legal rules from cases like <u>Button</u>, which turned on indeterminate delay in a search warrant application rather than immediate action under the automobile exception, can only produce impractical precedent.

II

All that remains is to apply the proper analysis of probable cause without the taint of the magistrate judge's error of law. There is no dispute that the automobile exception to the search warrant requirement applies in this case if Officer Abbott had probable cause for the search. <u>Wells</u>, 347 F.3d at 287. Therefore, the search under the speaker was valid if, "given the totality of the circumstances, a reasonable person could believe there [was] a fair probability that contraband or evidence of a crime would be found" in that particular place. <u>Id.</u> (quoting <u>Fladten</u>, 230 F.3d at 1085).

---

[6] In any event, <u>Button</u> held that an informant's present-tense statements should be assumed to have been current at the most remote time at which the informant **passed knowledge to the police officer**, not at the most remote time in which the informant observed the defendant. 653 F.2d at 324-25. Therefore, even if <u>Button</u> were somehow applicable to the facts of this case, the magistrate judge's application of <u>Button</u>'s holding was faulty.

-16-

This inquiry includes consideration of whether the available information is timely. See Smith, 266 F.3d at 904. "Courts should apply a common sense approach and, considering all relevant circumstances, determine whether probable cause exists." Gleich, 397 F.3d at 612.

The personal and recent knowledge of an identified eyewitness may be sufficient to establish probable cause. See, e.g., Cundiff v. United States, 501 F.2d 188, 190 (8th Cir. 1974). In this case, a reasonable person in Officer Abbott's position could have believed that Ruud's information was recent. Officer Abbott had corroborated Ruud's story about the safe and her description of Kennedy's involvement. He was aware that Ruud and Kennedy previously had lived together and continued to the present in a "significant sexual relationship." Report and Recommendation at 6. He was also aware that Kennedy was in possession of a large amount of cash. Finally, Ruud told him that Kennedy "deals in a lot of methamphetamine" and "keeps" it under a loose speaker in his car, and Ruud was "extremely adamant" that he check under the speaker immediately. Under these circumstances, especially with knowledge of an ongoing "significant" relationship, a reasonable person could interpret Ruud's urging to check under the speaker immediately as an indication that Ruud had good reason to believe the methamphetamine was presently under the speaker. This was enough to establish a fair probability that the contraband would be found in that particular place, authorizing Officer Abbott to proceed with the search under the automobile exception to the search warrant requirement. See, e.g., United States v. Alverez, 235 F.3d 1086, 1089 (8th Cir. 2000) (upholding an immediate search inside a spare tire in the defendant's trunk "[b]ecause the troopers had probable cause to believe that contraband was secreted in the vehicle, in particular in the spare tire, [so] they could lawfully complete a full and thorough search of the tire, including dismantling or damaging it").

## III

The magistrate judge's analysis of probable cause was tainted by an error of law. Considering the totality of the circumstances, a reasonable person in Officer Abbott's position, free of the magistrate judge's erroneous assumption that Ruud's information had to be six months old, could have believed there was a fair probability that methamphetamine would be found under the speaker in Kennedy's trunk. Therefore, I would reverse the district court's order granting the motion to suppress the evidence obtained from the search of Kennedy's vehicle. Accordingly, I respectfully dissent.

_____